## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PETRA MATA,

    *Plaintiff,*

v.

DESLAURIERS, INC.,

    *Defendant.*

No. 21 CV 3976

Judge Lindsay C. Jenkins

### MEMORANDUM OPINION AND ORDER

Plaintiff Petra Mata ("Plaintiff" or "Mata") brings this employment discrimination suit against her former employer, Deslauriers, Inc. ("Defendant" or "Deslauriers"), for alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), retaliatory discharge in violation of Illinois common law, and violation of Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"). Currently before the Court is Defendant's partial motion to dismiss the complaint for failure to state a claim [Dkt. 9].[1] For the following reasons, the motion to dismiss is denied.

---

[1] The motion also requested a stay of the case pending the Illinois Supreme Court's ruling in *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511, which concerned whether the exclusivity provisions of the Illinois Workers' Compensation Act barred an employee's claims for liquidated damages under BIPA. On November 17, 2021, the Court stayed the case. [*See* Dkt. 15.] On February 10, 2023, the parties informed the Court that the Illinois Supreme Court had decided *McDonald*. [*See* Dkt. 19, attaching *McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253 (Ill. Sup. Ct. Feb. 3, 2022).] The Court therefore proceeds to resolving Defendant's arguments in support of dismissing the ADA and retaliatory discharge claims.

I.    **Background**

The following facts are taken from Mata's complaint [Dkt. 1] and assumed to be true for purposes of the

 motion to dismiss. Around February 2020, Deslauriers, a manufacturer and distributor of concrete, metal, and plastic construction products, hired Mata as a Machine Operator. [Dkt. 1 at 2-3]. Mata adequately performed the job duties that she was assigned. But around April 6, 2020, Mata "greatly injured her hand while performing her assigned work duties." [*Id.* at 3.] Mata notified her employer but was instructed to continue working. "After about 2 to 3 weeks," Mata's "pain worsened to the point where she could no longer move her hand." [*Id.*] Mata notified Deslauriers and was sent to see Deslauriers' doctor. Around April 23, 2020, the doctor ordered Mata to undergo physical therapy and gave her "restrictions," because the injury "substantially limited" Mata's ability to lift and push with her left hand. [*Id.*] Mata "asked Defendant for accommodations to allow her to perform the essential functions of her job." [*Id.*]

Sometime in May 2020, Mata suffered another workplace injury, cutting her right elbow. Mata notified her manager about the injury. He told her to see the company doctor, but the doctor's office was not open at that time and Mata instead went to the emergency room. [*Id.*] She received several stitches and paid out-of-pocket for the visit. Her injury required her to miss two weeks of work, for which she was not paid. [*Id.*]

2

On May 29, 2020, Deslauriers informed Mata that her "restrictions had been removed" and she was required to return to full duty. [*Id.*] Mata "contacted her doctor and discussed her inability to do her job without an accommodation, and her restrictions were immediately reissued on June 1, 2020." [*Id.* at 4.] Mata "notified Deslauriers that her restrictions had been reinstated and asked to be accommodated." [*Id.*]

Mata alleges that following her injuries, her employer began treating her differently. For example, her manager often would not provide her with a break like other similarly situated employees. [*Id.*] On June 12, 2020, Deslauriers asked Mata to lift boxes, which was contrary to the restrictions set out by her doctor. [*Id.*] Mata "sought to be accommodated but Defendant refused" and "did not offer any alternative." [*Id.*] Instead, when Mata "went in to discuss her accommodations and Defendant's refusal to uphold these, … she was fired," on June 12, 2020 [*Id.*; Ex. 1].

On April 8, 2021, Mata filed Charge No. 440-2021-03360 with the Illinois Department of Human Rights ("IDHR"), which cross-filed the charge with the EEOC. [*See* Dkt. 1, Ex. 1 (copy of charge).] The charge shows that Mata complained of discrimination on the basis of disability. She alleged: "I began my employment with Respondent on or about February 2020. My most recent position was Machine Operator. During my employment with Respondent, I was injured on the job, I requested a reasonable accommodation and it was denied. On or about June 12, 2020, I was discharged. I believe that I have been discriminated against because of my

disability, in violation of the Americans with Disabilities Act of 1990, as amended." [*Id.*] On April 28, 2021, the EEOC issued its notice of right to sue. [Dkt. 1-2.]

Mata timely filed this lawsuit. In Count I, she alleges that Defendant violated the ADA by refusing to engage in the interactive process to determine a reasonable accommodation, terminating her employment, and retaliating against her. [Dkt. 1 at 5.] In Count II, she brings a claim for retaliatory discharge under Illinois common law. Mata alleges that she was terminated because she sought treatment of and accommodations for injuries she suffered on the job, in violation of the Illinois public policy prohibiting employers from retaliating against employees for seeking to exercise their lawful rights to pursue claims arising out of work-related injuries under the Illinois Workers' Compensation Act ("IWCA"). [*Id.* at 6]. Finally, in Count III, Mata brings a claim for violation of BIPA. Defendant moves to dismiss only the first two counts of the complaint, and therefore no further discussion of the BIPA claim is necessary in this opinion.

## II. Legal Standard

Defendant moves to dismiss Counts I and II of Mata's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), Mata's complaint must allege facts which, when taken as true, 'plausibly suggest that the Mata has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw[s] all reasonable

inferences in Mata's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

This case involves a claim for employment discrimination under the ADA. At the pleading stage, a plaintiff "does not need to allege facts to support a *prima facie* case of disability discrimination." *Elzeftawy v. Pernix Group, Inc.*, 477 F. Supp. 3d 734, 765 (N.D. Ill. 2020); *see also Rowlands v. United Parce Service – Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018) (explaining that because the Federal Rules of Civil Procedure require a plaintiff "to plead *claims* rather than facts corresponding to the elements of a legal theory," it would be "'manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each'" (quoting *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017))). Rather, the pleading requirement for employment discrimination claims "is minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017). Typically, "[a] plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Id.*; *see also Tate v. SCR Medical Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Tamayo*, 526 F.3d at 1084–85. A claim for "discrimination on the basis of an actual disability" must also "allege a specific disability" to provide fair notice to the employer. *Tate*, 809 F.3d at 345.

## III.    Analysis

### A.    ADA

#### 1.    Discrimination

To prove a claim for discrimination in violation of the ADA, a plaintiff "must show (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022) (citing *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020)). The ADA defines "disability" to include: (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such impairment"; or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A-C). An impairment substantially limits a major life activity when a person "is either unable to perform a major life activity or is significantly restricted as to the condition, manner or duration under which the individual can perform the major life activity as compared to the average person in the general population." *Furnish v. SVI Sys., Inc.*, 270 F.3d 445, 450 (7th Cir. 2001) (citations omitted).

Deslauriers argues that Mata's claim for disability discrimination must be dismissed because Mata has not sufficiently alleged the first element of an ADA claim, specifically that she has a "disability" as defined by the ADA. This argument has two parts.

First, Deslauriers asserts that Mata's cursory factual allegations about her hand "fails to allege how her hand injury impaired her ability to work." [Dkt. 10 at 5.] This argument, however, ignores the complaint's allegations that Mata's hand injury substantially limited her ability to lift and push, both of which fall within the statutory definition of major life activity.[2] Specifically, the complaint alleges that Mata "greatly injured" her left hand on April 6, 2020 while performing her job. [Dkt. 1, ¶ 12.] Within two or three weeks, she was in such pain that she could not move her hand, ultimately resulting in a visit to Deslauriers' doctor, who issued restrictions. [*Id.* at ¶ 14, 15] Mata then alleges that her "medical condition constituted a physical impairment that substantially limited [Plaintiff] in one or more major life activities, *including but not limited to lifting and pushing with her left hand.*" [*Id.* at ¶ 16 (emphasis added)]. She also alleges that she asked for "accommodations to allow her to perform the essential functions of her job." [*Id.* at ¶17]. Though the accommodations she requested are not spelled out, it is reasonable to infer that they concerned lifting or pushing with her left hand. For example, the complaint says that, "on June 12, 2020, Defendant asked [her] to break [the restrictions] and *lift boxes.*" [*Id.* at 4 (emphasis added)]. Mata claims that when she refused out of concern for her health, Deslauriers declined to discuss her accommodations and instead terminated her. [*Id.*].

---

[2]    42 U.S.C. § 12012(2) provides that major life activities include, "caring for oneself, *performing manual tasks,* seeing, hearing, eating, sleeping, walking, standing, *lifting,* bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." (emphasis added).

Read together, these allegations plausibly suggest a disability within the meaning of the ADA. They make a connection between her injury, her medical restrictions, and her ability to work: a hand injury led Mata to see Deslauriers' doctor, who imposed certain restrictions. The injury substantially limited her ability to lift and perform other tasks that required lifting or pushing with her left hand. Mata's alleged inability to perform such tasks, along with her demand for an accommodation in the form of honoring her own doctor's restrictions, is what led to the decision to terminate her.

The allegations at issue here are unlike, for instance, *Tate*, 809 F.3d at 345, where the plaintiff's complaint was six sentences long and referred to plaintiff's "disability" but provided no other detail or indication how any disability related to his employer's decision to discharge him. *See also, e.g.*, *Mohammed v. DuPage Legal Assistance Foundation*, 781 Fed. Appx. 551, 552–53 (7th Cir. 2019) (complaint that "allege[d] vaguely" that plaintiff "has 'Emotional Disabilities,'" but did not identify them or allege that they substantially limited a major life activity, insufficient to state an ADA claim based on actual disability). Nor is this a case where the complaint fails to connect the dots between an impairment and the ability to work. *See, e.g,* *Prince v. Illinois Dep't of Revenue*, 73 F. Supp. 3d 889, 893 (N.D. Ill. 2010) (plaintiff's allegations that he had diabetes and heart diseases were dismissed because the complaint did not "explain how, or whether … various medical conditions substantially limit [a plaintiff's] major life activities.")

8

As to its second challenge to the sufficiency of Mata's allegations of disability, Deslauriers argues that Mata does not allege that "her limitations were permanent or long-term." [Dkt. 10 at 5.] According to Deslauriers, intermittent, episodic impairments are not disabilities. [*Id.* at 4.] As Mata emphasizes, however, this argument is premised on a prior version of the ADA. Since Mata complains of employment discrimination that occurred "after January 1, 2009, the 2008 amendments to the ADA, which expanded the Act's coverage, apply to [her] claim." *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) (citing ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553); *see also Bob–Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 880 (N.D. Ill. 2014) ("Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive."); *Love v. Board of Education of City of Chicago*, 2020 WL 247378, at *4 (N.D. Ill. 2020).

The term "disability" is to be "construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted" by its terms. *Id.* § 12102(4)(A). Prior to the 2008 amendment, "[i]ntermittent, episodic impairments [were] not disabilities, the standard example being a broken leg." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995). But as the Seventh Circuit recognized in *Gogos*,

> Under the 2008 amendments, a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is "transitory and minor" (defined as lasting six months or less). *See* [42 U.S.C.] § 12102(3)(B) (Only paragraph (1)(C) of the definition of disability "shall not apply to impairments that are

> transitory and minor."); 29 C.F.R. § 1630.2(j)(1)(ix). Likewise, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

737 F.3d at 1172-73. Similarly, the Interpretative Guidance to the regulations promulgated under the 2008 amendments explains that "an impairment does not have to last for more than six months in order to be considered substantially limiting under the first or the second prong of the definition of disability." 29 C.F.R. Pt. 1630, App. ("Section 1630.2(j)(1)(ix) Effects of an Impairment Lasting Fewer Than Six Months Can Be Substantially Limiting"). *See also Modjeska v. UPS*, 54 F. Supp. 3d 1046, 1060-61 (E.D. Wis. 2014) ("[W]hile a temporary impairment may not have been considered a disability prior to 2009, the regulations [post-amendment] provide that '[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.'").

Given that "Congress did not intend for the threshold question of disability to be used as a means of excluding individuals from coverage," 29 C.F.R. Pt. 1630, App., discrimination claims have been routinely allowed to proceed under comparable facts. *See, e.g.*, *Bob-Maunuel*, 10 F. Supp. 3d at 881 (rejecting the argument that "a hernia is a temporary impairment that can be resolved with surgery [and] it cannot be substantially limiting"); *Love*, 2020 WL 247378, at *4 (plaintiff adequately pleaded that "torn rotator cuffs" impaired the major life activity of "lifting" and she was therefore disabled under the ADA); *Quinn v. Chicago Transit Authority*, 2018 WL 4282598, at *7 (N.D. Ill. Sept. 7, 2018) (denying motion to dismiss ADA discrimination

claim brought by plaintiff who injured hand at work, where plaintiff was restricted from returning to work for six weeks due to "limited use" of his left hand and was subsequently advised to avoid lifting more than twenty pounds; these allegations established "at least a plausible basis for finding a record of an impairment that substantially limited a major life activity"); *Jenkins v. Chicago Transit Authority*, 2017 WL 3531520, at *5 (N.D. Ill. Aug. 17, 2017) (allegations that plaintiff's foot was fractured, that a doctor prescribed "limited" walking, and that she was required to wear a therapeutic boot were sufficient to "suggest a plausible claim that [plaintiff's] walking was substantially limited such that she would be considered disabled").

For these reasons, Deslauriers' motion to dismiss Count I's disability discrimination claim under the ADA is denied.

## 2. Retaliation

To make out a *prima facie* case of retaliation under the ADA, "a plaintiff must submit evidence that (1) she engaged in protected activity, (2) her employer took an adverse action against her, and (3) there was a 'but for' causal connection between the two." *Parker v. Brooks Life Science, Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (quoting *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020)). Requesting an accommodation for a disability is a protected activity under the ADA. See *Rowlands*, 901 F.3d at 798 ("The ADA prohibits retaliating against individuals (qualified or not) who have engaged in activities protected by the ADA, such as filing a Charge of Discrimination with the EEOC or requesting reasonable accommodations."); *Arce v.*

*Chicago Transit Authority*, 738 Fed. Appx. 355, 359 (7th Cir. 2018); *Elzeftawy*, 477 F. Supp. 3d at 766.

Deslauriers makes a cursory argument that Mata's retaliation claim fails because she "alleges the retaliation occurred 'because of her disability' and not because she engaged in a statutorily protected activity." [Dkt. 10 at 6 (citing Dkt. 1 at 5, ¶¶ 34, 39).] As before, this argument ignores certain allegations in the complaint, specifically paragraphs 27, 28 and 29, which are incorporated by reference into Count I of the complaint for violations of the ADA. [*See* Dkt. 1 at 4, ¶¶ 28, 29, 30).] In paragraphs 27 and 28, Mata alleges that when Deslauriers ordered her to break her medical restrictions on June 12, 2020, including by lifting boxes, she "sought to be accommodated but Defendant refused" and "did not offer any alternative." [Dkt. 1 at ¶ 27-28]. And in paragraph 29, Mata alleges that when she "went in to discuss her accommodations and Defendant's refusal to uphold these," "she was fired." [*Id.* at ¶ 29]. Viewing the complaint as a whole and drawing all reasonable inferences in Mata's favor, as the court must at this stage, these allegations are sufficient to support an ADA claim that Mata was terminated in retaliation for engaging in the protected activity of requesting an accommodation. Defendant's motion to dismiss the ADA retaliation claim is therefore denied.

### B. Retaliatory Discharge

Deslauriers also seeks dismissal of Count II, the retaliatory discharge claim. Illinois common law "recognize[s] a narrow limitation on an employer's otherwise unbounded discretion to discharge an at-will employee, allowing such an employee to

pursue a claim of retaliatory discharge when he has been terminated in violation of public policy." *Barwin v. Village of Oak Park*, 54 F.4th 443, 454 n.11 (7th Cir. 2022). "A former employee bringing a common-law claim for retaliatory discharge must show: '(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy.'" *Perez v. Staples Contract & Commercial LLC*, 31 F.4th 560, 571 (7th Cir. 2022) (quoting *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. Sup. 2009)). In Illinois, it is unlawful to terminate an employee in retaliation for exercising her rights under the IWCA. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012).

Deslauriers argues that this claim must be dismissed because Mata fails to plead that she exercised a right granted by the IWCA. Deslauriers faults Mata for pleading that she was terminated because she sought treatment for her injuries and an accommodation, "without alleging any facts related to an actual workers' compensation claim nor any facts about the injury or injuries upon which the purported workers' compensation claim was based." [Dkt. 10 at 7.]

Although Deslauriers is correct that Mata does not allege that she filed a workers' compensation claim for her injuries, Illinois law recognizes at least three ways in which an employee may exercise a right under the IWCA. *Gordon*, 674 F.3d at 773. One such way occurs when "an employee exercises a right under the IWCA merely by requesting and seeking medical attention." *Gordon*, 674 F.3d at 773 (citing *Hinthorn v. Roland's of Bloomington, Inc.*, 519 N.E.2d 909 (Ill. Sup. 1988)); *see also Gacek v. American Airlines, Inc.*, 614 F.3d 298, 299 (7th Cir. 2010) ("a discharge

13

motivated by such an injury report is a retaliatory discharge under Illinois workers' compensation law").

In *Hinthorn,* the Illinois Supreme Court explained that "the overriding purpose of the [IWCA] is to protect injured employees by ensuring the availability of medical treatment, by shifting the financial burden of such treatment to the employer." 519 N.E.2d at 913. Since "[r]equesting and seeking medical attention ... is only the crucial first step in exercising rights under the Workers' Compensation Act," it would "be anomalous to allow a retaliatory discharge action to employees who are fired after filing a workers' compensation claim for work-related injuries, but not those who are injured and fired before they ever get the chance to file such claims." *Id*. The *Hinthorn* court held that an employee who was told to seek other employment after she informed the company vice president of her back injury and intent to seek medical attention had a viable claim for retaliatory discharge under the IWCA. *d*. at 910–13. Similarly, in *Gordon*, the Seventh Circuit held that an employee met her burden of alleging the exercise of a right under the IWCA where, after sustaining a workplace injury, the employee reported the injury, requested to go to the hospital and the next day informed her supervisor that she would be seeking additional medical attention from her family doctor. 674 F.3d at 774.

Against these standards, Mata's allegations are sufficient. Mata alleges that she requested that Deslauriers and her supervisor permit her to seek medical attention for her work-related injuries. [Dkt. 1, ¶¶14-15, 19, 45.] According to the complaint, after she reported these injuries, Deslauriers treated her differently and

less favorably compared to similarly situated employees, and then fired her the same day she sought to enforce her medical restrictions. [*Id.* ¶¶ 26, 28, 29.] These allegations are enough for the retaliatory discharge claim to survive dismissal. *See, e.g., Stevenson v. FedEx Ground Package System, Inc.*, 69 F. Supp. 3d 792, 799 (N.D. Ill. 2014) (granting employee's motion for judgment as a matter of law on retaliatory discharge claim where employee "exercised his right to seek medical attention without employer interference, a right guaranteed by IWCA" and it was undisputed that the employer "terminated [his] employment because of his exercise of that right"); *Kirchner. v. Sunbelt Rentals*, 2011 WL 1303997, at *3 (N.D. Ill. Apr. 1, 2011) (denying employer's motion for summary judgment on employee's claim for retaliatory discharge based on *Hinson*).

Finally, Defendant suggests that the complaint should be dismissed because Mata has not alleged "causation or even connection between" her termination (and who was responsible for it) and a workers' compensation claim. [Dkt. 10 at 7]. Defendant argues that the allegations as pled show that Mata "was terminated for insubordination"—a valid basis for termination under Illinois law—since Defendant "instructed her to work, and she refused." [Dkt. 10 at 7 (citing *Hunt v. DaVita*, 680 F.3d 775, 779 (7th Cir. 2012).]

But Mata nowhere alleges that she was fired for insubordination. Rather, she alleges that following her injury, she made a report to Deslauriers, sought medical treatment and was given restrictions by its doctor, all of which resulted in her termination. [Dkt. 1 at ¶ 45-46]. Accepting these allegations as true, as the Court

15

must at the pleadings stage, "the circumstances surrounding [her] termination plausibly suggest that [her anticipated] pursuit of the workers' compensation claim" motivated the termination. *Brooks*, 729 F.3d at 768 (reversing dismissal of workers compensation retaliation claim due to impermissible adverse inference from the pleadings regarding the reasons for the employee's termination, noting that the question of causation "cannot be resolved on the pleadings").

Accepting Deslauriers' view of the pleadings would require the Court to make inferences in its favor, which, of course, the Court cannot do on a Rule 12(b)(6) motion. *See Cochran*, 828 F.3d at 599. So, the motion to dismiss the retaliatory discharge claim is therefore denied, as well.

## IV.   Conclusion

For these reasons, Defendant's motion to dismiss is denied [Dkt. 9]. The stay imposed [Dkt. 15] is lifted. Defendant shall answer the Complaint on or before April 12, 2023. An in-person status hearing is set for April 27, 2023, at 9:00 a.m. in Courtroom 2119. The parties shall file an initial status report using the initial status report form found on the court's webpage on or before April 20, 2023. The report should propose a discovery schedule. The parties need not file a status report on April 5, 2023.

Enter: 21-cv-3976

Date: March 28, 2023

_____
Lindsay C. Jenkins
United States District Judge

16